## MANUFACTURER'S BANK *vs.* OSGOOD *& al. and Trustee.*

A. having a claim against another, assigned it to B., C. and D., his creditors and attorneys, to pay them for *their services in a certain suit* then pending, the overplus to be paid to A. The amount of the claim was afterward received by B. when he was summoned, in a process of foreign attachment, as the trustee of A. *Held,* that it was not necessary that C. and D. should also have been summoned jointly with B. — that, in addition to the demand which the assignment was intended to secure, B. might set off a claim which he had against the principal, for services other than those rendered in the suit aforesaid — that, he could retain for C. and D. also, enough to satisfy their claim for *services in that suit ;* but not to pay a note against A., held by them, growing out of other transactions.

IN this case, the trustee disclosed that, on the 21*st* of *September,* 1828, *Osgood,* the principal defendant, had a suit against

one *Nathan Elden,* pending in the Supreme Judicial Court, in which *Messrs. J. and E. Shepley* and himself were engaged as counsel—and that during the progress of the trial, *Osgood* made to them the following assignment, *viz.*: " Know all men by these " presents, that I, *James Osgood,* for a valuable consideration, " hereby assign and make over to *J. & E. Shepley* and *J. Fair-* " *field,* all my claim against *Nathan Elden,* in the action myself " plaintiff in review, against said *Elden,* now pending in the Su- " preme Judicial Court, and the judgment that may be rendered " in said suit in my favor — to have and to hold the same and all " moneys that may by them be received by virtue of said claim " or judgment, for the purpose of paying them their charges and " claims against me for services, &c. rendered in said action, the " balance to be paid me on demand. Given under my hand and " seal, &c."

That, the same day a verdict in said suit was rendered in favor of *Osgood,* on which he had judgment; and on account of which, he, the trustee, afterward received the sum of $313,74. That, at the time of receiving it, and of the service of the writ, there was due to him from *Osgood,* for his services and expenditures in that suit, $118,01 — and for other professional services, $5,74. That, the *Messrs. Shepleys,* by their memorandum in writing, handed to him, claimed to have one half of the amount paid to them under the assignment, or that they should be called on jointly with said trustee. He stated further, that he believed their claim for services in the suit aforesaid, was about $40. — and that they had a note against *Osgood* for about $80, growing out of other transactions.

*J. Shepley,* contended, 1. that the trustee should be discharged, because the other assignees and joint proprietors of the money, living within the process of the Court, were not summoned.

It was immaterial which of the joint assignees had the actual custody of the money. Their rights ought not to he affected by the circumstance that it was received by one rather than another of the assignees. A payment by *Elden* to either of them would be a valid payment; and as they were not partners, it was im-

possible that it should be more effectually in the hands of the whole three, than it was, unless it had been actually divided.

" The general rule is, that the possession follows the property ; and the possession of one, under a joint title, is the possession of all, holding under the same title. The circumstance that the property was in the custody of one, does not constitute a several possession." *Guild* v. *Holbrook & Trustees,* 11 *Pick.* 101.

The indebtedness to *Osgood* arose in consequence of a joint conveyance by him to the assignees, and their accountability to him was a joint one. " When therefore," say the Court in *Jewett* v. *Bacon & Tr.* 6 *Mass.* 62, " a debtor holds a joint contract against two or more, and a creditor would avail himself of the benefit under this special attachment, he must summon all the parties liable by law to discharge it." To the same point he cited also *Parker* v. *Danforth,* 16 *Mass.* 299 ; *Kidder* v. *Packard,* 13 *Mass.* 82.

2. But if the trustee ought not to be discharged for these reasons, then it is insisted he has a right to retain of the money in his hands, enough to pay all the demands which he and the *Messrs. Shepleys* had against *Osgood,* at the time of the service of the writ, which will absorb the whole fund. This position is fully supported by the decision of the Court in *Hathaway* v. *Russell,* 16 *Mass.* 473, in which the Court say that, " when one or more joint debtors are omitted in a trustee process, care must be taken that the others shall not be subjected to any loss or inconvenience." The Court held, that all set-offs, which the joint debtors, or either of them, had against the principals, should be allowed, whether summoned or not. And that, this right of set-off extended " to all demands against the principal, of which he could avail himself in any form of action, or any mode of proceeding between himself and his principal ; whether by way of set-off on the trial, as provided by our statutes ; or by setting off the judgment under an order of Court ; or by setting off the executions in the hands of the sheriff, as also provided by statute."

In a suit against either *Fairfield* or the *Shepleys,* they would have had the right of setting-off all their respective claims, if a suit could be maintained against either separately. Surely they could if the suit were against them jointly, as it should be.

Their contract was joint, and the remedy upon it should be pursued against them jointly. And why should the plaintiff, by refusing to summon all the assignees, acquire rights over this money which *Osgood* himself had not, and could not assert by any suit in his own favor ?

*A. G. Goodwin*, for the plaintiffs, cited *Hathaway* v. *Russell*, 16 *Mass.* 473; *Cushing's Trustee Process*, 44; *Donnells* v. *Edwards*, 2 *Pick.* 617 ; *Parker & al.* v. *Danforth & al. & Trustee*, 16 *Mass.* 299.

At a subsequent term, the opinion of the Court was delivered by

PARRIS J. — Neither the *Messrs. Shepleys* or *Mr. Fairfield*, has, by virtue of the assignment, any greater interest in the judgment against *Elden*, than to the amount of their several charges, and claims against *Osgood*, for services rendered in the action on which that judgment was obtained. They did not become the debtors of *Osgood*, merely by receiving the deed of assignment; neither did they, upon the payment of the money, become his *joint* debtors, even if the amount should exceed their respective demands. Although the assignment is, in form, joint, yet the interests of the assignees are several, and either might maintain a separate action to enforce his rights, as readily as if the assignment had been to him alone. *Platt on Covenants*, 130; 1 *Saund.* 154; *Servante* v. *James*, 10 *Barn. & Cresw.* 410; *Prince* v. *Shepard*, 9 *Pick.* 185.

The true construction of the instrument is, that so much of the judgment was assigned to the *Messrs. Shepley* as should be sufficient to pay their demand for professional services, and so much as should be necessary, was, for the like purpose, assigned to *Mr. Fairfield*, and the balance remained the property of *Osgood*, not assigned to any one, and for which he would have a right of action against either *Shepley* or *Fairfield*, to whichever it might have been paid. But, inasmuch as they were not partners, and had entered into no joint engagements or covenants, it is not perceived that *Osgood* could maintain an action against them jointly for the balance remaining in the hands of either.

Manufacturer's Bank *v.* Osgood & trustee.

The money was, in fact, paid over to *Fairfield* by *Elden*. Could *Osgood* immediately thereafter have maintained an action, for money had and received, against the *Messrs. Shepley?* They had received none of the money, not even that to which they were entitled for their professional services. They had, in no way, become accountable to *Osgood* for *Fairfield's* acts, or for any balance that might remain in his hands, and we do not see how *they* could be considered as *Osgood's* debtors.

The cases cited by the counsel in defence, are all distinguishable from this in important particulars. The case of *Guild* v. *Holbrook*, was an assignment by an insolvent debtor for the purpose of paying the assignees and other creditors, *and the property was received by the assignees jointly.* The court say, "that the possession of one under a *joint* title, is the possession of all holding under the same title. It must generally happen that one of several *joint* owners of personal property must hold the custody for himself and co-tenants, unless they happen to be partners." These observations can have no application to the case under consideration, for *Shepley* and *Fairfield* were not owners of the balance remaining after paying their several demands. If they were, then clearly this process cannot be maintained, for it is only upon the goods, effects, and credits of *Osgood*, that it can operate.

In *Jewett* v. *Bacon*, the court, in the passage relied upon by the counsel, are speaking of a joint debt or contract against two or more; and they say, that in such a case, all the parties liable by law to discharge the contract, should be summoned. So in *Kidder* v. *Packard*, the court say, " debtors, who are co-partners here, must all be summoned;" and in the case of *Hathaway* v. *Russell*, a part only of joint contractors, with the principal defendant, were summoned as trustees. If, at the time of the service of the writ, in the case at bar, the *Messrs. Shepley* had been answerable to *Osgood*, for the money actually in *Fairfield's* hands, then the authorities relied upon would be applicable, but as they were not in any manner indebted or answerable, it was not necessary that they should be summoned as trustees.

It is further contended, that if they are not entitled to come in and disclose as trustees, they are entitled to have retained in *Mr.*

*Fairfield's* hands, an amount, sufficient not only to satisfy their demands for professional services covered by the assignment, but also such other demands as they may have against *Osgood,* and of which they could avail themselves by way of set-off in a suit by him against them.

If this money was so situated that *Osgood* could not reach it, except by a suit against the *Messrs. Shepley,* the position would be entitled to consideration ; as to permit *Osgood's* creditors to reach the money, through the trustee process, free from *Shepley's* right of off-set, when *Osgood,* himself, could not do it, would be clearly improper. But the case is not thus situated. Whatever claims *Osgood* may have for the balance, after paying the sums included in the assignment, they are to be enforced against *Fairfield.* He alone has received so much of *Osgood's* money, and he alone is accountable for it. It follows, therefore, that *Osgood* could call for this balance, without being subjected to off-set on account of any demands of the *Messrs. Shepley,* other than those specially covered by the assignment.

We think that *Mr. Fairfield* has a right to retain sufficient to satisfy all his demands against *Osgood,* and also sufficient to satisfy the *Messrs. Shepley,* for their services rendered in the action against *Elden,* as provided for in the assignment, and that for the balance, he must be adjudged trustee.